IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FORMTEC, LLC**, a Wisconsin limited liability company,<br><br>        Plaintiffs,<br><br>        v.<br><br>**JAMES B. WOLFF**; **ELISABETH WOLFF**; **SPHERICAL IP, LLC**; **SPHERICAL INNOVATIONS, LLC, d/b/a WOLFF GUNSMITHING & MACHINE REPAIR**; **JAMES B. WOLFF and KRISTINE B. WOLFF,** TRUSTEES OF THE JAMES B. WOLFF and KRISTINE B. WOLFF REVOCABLE LIVING TRUST; and **KRISTINE WOLFF,** TRUSTEE OF THE ELISABETH WOLFF IRREVOCABLE TRUST,<br><br>        Defendants. | Case No. 3:25-cv-704-SI<br><br>**OPINION AND ORDER** |

William G. Fig, SUSSMAN SHANK, LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205; and Trevor M. Gomberg, LEVITT LLP, 129 Front Street, Mineola, NY. Of Attorneys for Plaintiff Formtec, LLC.

Stephen Healy and Sean D. Healy, LAW OFFICES OF STEPHEN HEALY, 1390 N. McDowell Blvd., Suite G, Petaluma, CA 94952. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

       Plaintiff Formtec, LLC ("Formtec") entered into a contract with Defendant Spherical IP,

LLC ("Spherical IP"). The business relationship soured, and Formtec brought an arbitration

PAGE 1 – OPINION AND ORDER

proceeding against Spherical IP. Formtec obtained an award from the arbitrators against Spherical IP in the amount of $1,552,443.71 for attorney's fees and costs. Formtec had the arbitration award confirmed by the Eastern District of Wisconsin and obtained a money judgment from that court.

Formtec domesticated the Wisconsin judgment in Clackamas County Circuit Court in Oregon. Formtec then filed a state court action against James Wolff ("Wolff"), Elisabeth Wolff ("Ms. Wolff"), Spherical IP, Spherical Innovations, LLC, d/b/a/ Wolff Gunsmithing & Machine Repair ("Spherical Innovations"), and the Elisabeth Wolff Irrevocable Trust. Formtec asserted claims for piercing the corporate veil and alter ego liability. Defendants timely removed the case to this Court and moved to dismiss. Defendants also moved to stay discovery until the Court resolved Defendants' motion to dismiss.

Formtec responded to the motion to dismiss and then filed a First Amended Complaint. Formtec added as defendants James B. Wolff and Kristine B. Wolff, as trustees of the James B. Wolff and Kristine B. Wolff Revocable Living Trust and Kristine Wolff, as trustee of the Elisabeth Wolff Irrevocable Trust. Formtec removed as a defendant the Elisabeth Wolff Irrevocable Trust. Formtec continues to bring the same two claims, for piercing the corporate veil and alter ego liability. Thus, the Court considers Defendants' motion to dismiss as against the First Amended Complaint.

Defendants argue that this case should be dismissed for failure to state a claim, lack of subject matter jurisdiction, claim preclusion, and on collateral attack arguing that the underlying judgment was obtained through fraud.[1] For the reasons discussed below, the Court grants in part

---

[1] Defendants also challenge Formtec naming the Elisabeth Wolff Irrevocable Trust as a defendant. Because Formtec has dropped that defendant in the First Amended Complaint, this aspect of Defendants' motion is denied as moot.

Defendants' motion, dismissing the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure and denying the motion on all other grounds. The Court denies Defendants' motion to stay discovery as moot.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[2]

Formtec and Spherical IP entered into an agreement titled the "FOT Agreement," signed September 2012 but effective as of January 1, 2012.[3] The FOT Agreement related to ownership of "fiber-orientation" and Venturi technology and associated intellectual property rights. Am. Compl. ¶ 1.

On May 27, 2021, Formtec commenced an arbitration before the AmericanArbitration Association ("AAA") against Spherical IP for disputes arising out of the FOT Agreement. *Id.* ¶ 3. On November 16, 2022, Formtec obtained the Interim Award of the arbitrators, prevailing on the merits for breach of the FOT Agreement. The arbitrators found that Wolff, as principal of Spherical IP, had disclosed to a third party Formtec's confidential information of water nozzles, thereby violating the FOT Agreement. That third party was Spherical Industries, LLC ("Spherical Industries). The arbitrators also concluded that Formtec was entitled to its attorney's fees and costs. On April 7, 2023, Formtec received the final award of the arbitrators, awarding

---

[2] Many of Formtec's factual allegations are alleged "on information and belief." For ease of reading, the Court generally summarizes Formtec's allegations without including that caveat. The Court also does not include in this section allegations irrelevant to the Court's Opinion and Order, including, as discussed below, allegations relating to alleged failure to maintain corporate structure and formalities.

[3] The Court incorporates by reference the FOT Agreement and the arbitration award because they are repeatedly cited and relied on in the First Amended Complaint. The Court thus takes some factual detail from those documents, which are in the Court record in *Wolff v. Tomahawk*, Case No. 3:21-cv-880-SI.

$1,552,443.71. *Id.* ¶ 4. On September 27, 2023, Formtec obtained a money judgment in the Eastern District of Wisconsin based on the arbitrators' award, and on November 24, 2023, Formtec domesticated that money judgment in Clackamas County Circuit Court. *Id.* ¶¶ 5-6. Formtec alleges that all Defendants either controlled, continue to control, or were controlled by, Spherical IP and thus should be jointly and severally liable for the money judgment. *Id.* ¶ 7.

Formtec alleges that Wolff is the managing member of Spherical IP. *Id.* ¶ 16. Formtec contends that Wolff was the sole individual operating Spherical IP, performing any function at Spherical IP, and who had all management control over Spherical IP. *Id.* ¶¶ 17, 77. Ms. Wolff and Andrew Wolff, Wolff's two children, are the other two members of Spherical IP, and each had a 40 percent ownership share. *Id.* ¶¶ 97, 98. Formtec further alleges that the children's consent was unnecessary for corporate acts such as the sale[4] of intellectual property owned by Spherical IP. *Id.* ¶ 18. Ms. Wolff had no management role at Spherical IP. *Id.* ¶¶ 55, 57.

Spherical IP and Spherical Innovations were both formed in November 2011. *Id.* ¶ 24. Wolff was the managing member and sole employee of Spherical Innovations. *Id.* ¶¶ 79, 83. In December 2011, confidentiality agreements were signed between (1) Formtec and Spherical IP; (2) Spherical IP and Spherical Innovations; and (3) Tomahawk Manufacturing, Inc. ("Tomahawk"),[5] an affiliate of Formtec, and Spherical Innovations. *Id.* ¶ 26.

After the FOT Agreement was signed by Formtec and Spherical IP in 2012, Spherical Innovations entered into a consulting agreement with Tomahawk under which Wolff performed

---

[4] Formtec alleges the "purchase" of intellectual property owned by Spherical IP, but Spherical IP would not act to purchase its own intellectual property, so the Court construes this allegation as Spherical IP acting to sell its own intellectual property.

[5] Formtec does not identify Tomahawk by name in the First Amended Complaint, but for ease in reading this Opinion and Order, the Court uses Tomahawk's name instead of "Formtec's affiliate." *See, e.g.*, Am. Compl. ¶¶ 26, 28, 31, 35.

duties for Tomahawk. *Id.* ¶¶ 27-29. Formtec alleges that Wolff "has testified" that he exchanged technology owned by Spherical IP with Spherical Innovations because he considered himself "one in the same" with those entities. *Id.* ¶ 30.

Formtec alleges that Spherical Innovations actually was formed so that the technology Wolff sold to Formtec could be transferred by Wolff and Spherical IP to a third party. *Id.* ¶ 29. In support, Formtec alleges that in March 2021, while serving as an employee of Tomahawk, Wolff entered into a confidentiality agreement with Spherical Industries and disclosed Formtec's confidential information to that entity.[6] *Id.* ¶ 31. Formtec also alleges that a year later, Wolff unilaterally attempted retroactively to change that confidentiality agreement to have Spherical IP be the signatory instead of Wolff. *Id.* ¶ 43.

Wolff refused employment with Formtec in May 2021 and filed a lawsuit against Tomahawk. *Id.* ¶ 35. Formtec filed the AAA arbitration against Spherical IP that same month. *Id.* ¶ 37. By November 2021, Spherical IP had closed its bank account. *Id.* ¶ 38. Formtec alleges that Wolff failed to distinguish between Spherical IP and Wolff individually, such as by referring to the technology Wolff developed but was owned by Spherical IP as the "Wolff technology." *Id.* ¶¶ 40-41.

Ms. Wolff allegedly accessed court documents based on her role as an owner of Spherical IP and then used those documents as a witness in a different court case. *Id.* ¶ 50. Formtec alleges

---

[6] Formtec relies on the findings of the arbitration panel that Wolff disclosed confidential information to Spherical Industries. In the arbitration, however, Spherical IP *stipulated* that water nozzles were covered by the FOT Agreement and thus was the confidential information of Formtec. Further, the conclusions by the arbitrators are not binding in this federal court proceeding, where Formtec must prove that Defendants engaged in improper conduct. To the extent the alleged improper conduct includes the misappropriation of confidential information, Formtec must prove it in this Court and may not rely on issue preclusion as against Wolff or any Defendant who was not a party to the arbitration.

that through this conduct Ms. Wollf "conflate[d]" her status as a member of Spherical IP and as an individual to view confidential information. *Id.* ¶ 51. Formtec, however, does not allege how this conduct harmed Formtec with respect to Spherical IP's ability to pay its judgment. Formtec also alleges that Ms. Wolff transferred Formtec's confidential information to Spherical Industries. *Id.* ¶ 52. Formtec provides no supporting facts or details about this purported transfer.

Formtec also contends, alleged on information and belief, that Spherical IP transferred some of its assets to the other Defendants without following corporate formalities and without receiving adequate consideration. *Id.* ¶¶ 59-60. Formtec also alleges, on information and belief, that Spherical IP directly paid the expenses of Wolff. *Id.* ¶ 61. Formtec further asserts, again on information and belief, that Wolff treated the funds of both Spherical IP and Spherical Innovations as his own, commingled those funds, and used the same books and records for those businesses. *Id.* ¶¶ 63-65. With respect to Spherical IP, Formtec alleges on information and belief, that Wolff commingled his personal assets with the company's, undercapitalized Spherical IP, paid excessive dividends or exacted unreasonable management fees, or otherwise engaged in improper conduct with the assets of Spherical IP. *Id.* ¶ 62. These actions allegedly deprived Formtec of the ability to collect its arbitration award against Spherical IP. *Id.* ¶ 67.

In addition, Formtec alleges that Wolff *may* have moved some of his assets to his trust to avoid collection by Formtec. *Id.* ¶ 87. Formtec also alleges that Wolff put $150,000 of "personal and/or related company legal expenses" through Spherical Innovations, which itself did not incur any legal expenses. *Id.* ¶ 86. Finally, Formtec generally alleges that Wolff set up different entities to commingle income from different sources and to mislead third parties as to what services were being provided by each entity. *Id.* ¶ 89.

# DISCUSSION

Defendants have moved to dismiss this case "pursuant to Federal Rules of Civil Procedure, Rules 12(b)(1) & (6) and the doctrines of claim preclusion and collateral attack." ECF 12 at 1. The Court addresses each argument. The Court first addresses the parties' requests for judicial notice.

## A. Judicial Notice

Both parties submitted significant extrinsic evidence with their briefing on Defendants' motion and request that the Court take "judicial notice" of the items. The items were submitted in connection with Defendants' motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, not Rule 12(b)(1), which may allow for the consideration of extrinsic evidence. Formtec requests that the Court take judicial notice of decisions from other courts and Spherical IP's response filed in the Eastern District of Wisconsin to Formtec's motion to confirm the arbitration award. Defendants request that the Court take judicial notice of many documents filed in the U.S. District Court of Nevada.

Under Rule 201 of the Federal Rules of Evidence, a court make take judicial notice of adjudicative facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)(2) advisory committee's note to 1972 proposed rules). "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)). In the preclusion context, a federal court may "[take] judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes." *Manufactured Home Cmtys. Inc. v. City of San*

*Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005) (describing *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002)). A court may not, however, "take judicial notice of facts presented in those documents or in court opinions for the purpose of considering those facts to be established in the case currently before them." *Dauven v. U.S. Bancorp*, 390 F. Supp. 3d 1262, 1269 (D. Or. 2019) (citing *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003)); *see also generally Lee*, 250 F.3d at 690 (stating that when a court takes judicial notice of "another court's opinion," it does so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (quotation marks omitted)). To the extent relevant to decide Defendants' preclusion argument, the Court takes judicial notice of the existence of, but not the facts contained within, the requested documents.

### B.  Motion under Rule 12(b)(1)

The Court has subject matter jurisdiction in this case because Formtec and its members are all citizens of Wisconsin[7] and the First Amended Complaint alleges that Defendants are all citizens of Oregon[8] and the amount in controversy is greater than $75,000. Defendants do not contend otherwise and removed this case from state court to this Court on the basis of diversity jurisdiction. *See* ECF 1 at 2.

To the extent Defendants base their motion under Rule 12(b)(1) on their assertions of claim preclusion, that argument fails. Claim preclusion may limit what the Court may adjudicate,

---

[7] Formtec has filed its Corporate Disclosure Statement. ECF 8.

[8] The corporate entity defendants have not filed their Corporate Disclosure Statements, despite Rule 7.1(b)(1) of the Federal Rules of Civil Procedure requiring such disclosures upon the first appearance or other address to the court, which was Defendants' removal of this case to federal court. Nor did Defendants file their corporate disclosures when they filed their motion to dismiss, even though first motions also are noted in Rule 7.1(b)(1) as a time to file the corporate disclosure statement.

but it is not jurisdictional. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("Preclusion, of course, is not a jurisdictional matter."). Thus, the Court denies Defendants' motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## C.  Motion under Rule 12(b)(6)

Defendants assert that Formtec fails to state a claim. Formtec alleges two claims, one for "piercing the corporate veil" and one for "alter ego liability." Under Oregon law, the "alter ego" theory is an avenue under which a plaintiff may seek to pierce the corporate veil and recover from an individual shareholder or member the debts of a corporation or limited liability company—it is the same test as piercing the corporate veil. *See Amfac Foods, Inc. v. Int'l Sys. & Control Corp.*, 294 Or. 94, 103-07 (1982) (establishing a singular test regardless of "alter ego" or "instrumentality" theories of piercing the corporate veil); *see also Stirling-Wanner v. Pocket Novels, Inc.*, 129 Or. App. 337, 340-41 (1994) ("[The plaintiff] argued that Dime Store was the alter ego of defendant and Randel and that its corporate veil should be pierced. . . . To prevail in her claim against defendant, she must still show that defendant was in control of the corporation, that defendant engaged in misconduct, and that that misconduct resulted in plaintiff's inability to collect from the corporation."); *Sterling Sav. Bank v. Emerald Dev. Co.*, 266 Or. App. 312, 341 (2014) (en banc) (recognizing that the test for piercing the corporate veil applies to limited liability companies). Thus, the Court considers these claims together.

### 1.  Legal Standards

Under Oregon law, "debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager." Or. Rev. Stat. § 63.165(1). A company's failure to observe "limited

liability company formalities or requirements relating to the exercise of its limited liability company powers or management of its business is not a ground for imposing personal liability on the members or managers." *Id.* § 63.165(2). "In Oregon, the doctrine of corporate veil piercing applies to LLCs [limited liability companies] in the same way that it does to corporations." *Sterling Sav. Bank*, 266 Or. App. at 341.

"The disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Amfac*, 294 Or. at 103. The Oregon Supreme Court has created a three-part test in evaluating such claims:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor corporation rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder. This causation requirement has two implications. The shareholder's alleged control over the corporation must not be only potential but must actually have been exercised in a manner either causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, the shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Id.* at 108-09. Accordingly, a plaintiff in Oregon can pierce the corporate veil when: (1) a defendant shareholder has actual control of a corporation; (2) exercises that control in an "improper" manner; and (3) that misconduct results in the plaintiff entering into the subject transaction, the corporation defaulting in its performance, or the corporation's inability to pay the plaintiff. *Id.*; *see also Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 429 (2004) ("Thus, to pierce, the plaintiff

liability company formalities or requirements relating to the exercise of its limited liability company powers or management of its business is not a ground for imposing personal liability on the members or managers." *Id.* § 63.165(2). "In Oregon, the doctrine of corporate veil piercing applies to LLCs [limited liability companies] in the same way that it does to corporations." *Sterling Sav. Bank*, 266 Or. App. at 341.

"The disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Amfac*, 294 Or. at 103. The Oregon Supreme Court has created a three-part test in evaluating such claims:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor corporation rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder. This causation requirement has two implications. The shareholder's alleged control over the corporation must not be only potential but must actually have been exercised in a manner either causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, the shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Id.* at 108-09. Accordingly, a plaintiff in Oregon can pierce the corporate veil when: (1) a defendant shareholder has actual control of a corporation; (2) exercises that control in an "improper" manner; and (3) that misconduct results in the plaintiff entering into the subject transaction, the corporation defaulting in its performance, or the corporation's inability to pay the plaintiff. *Id.*; *see also Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 429 (2004) ("Thus, to pierce, the plaintiff

must prove that (1) the defendant controlled the debtor corporation; (2) the defendant engaged in 'improper conduct'; and (3) as a result of that 'improper conduct,' plaintiff either entered into a transaction that it otherwise would not have entered into or plaintiff was unable to collect on a debt against the insolvent corporation.").

The Oregon Supreme Court has explained that ownership, even sole ownership, and control of a company and its operations, including "domination," is insufficient by itself to support piercing the corporate veil. *Amfac*, 294 Or. at 106-07. To pierce a corporate veil requires improper conduct. *Id.* at 107 ("Where actual exercise of control is shown to exist, improper conduct must also be demonstrated."). Improper conduct requires some amount of "moral culpability," which "narrows the range of illegal or tortious conduct that can be considered . . . for purposes of piercing the veil." *State ex rel. Neidig v. Superior Nat. Ins. Co.*, 343 Or. 434, 460 (2007). In this context, improper conduct needed to pierce a corporate veil must in some way seek to manipulate the corporate form to the detriment of the corporation's creditors. *See id.* ("[C]onduct that can be considered 'improper'" includes "oppressive or manipulative conduct that uses a corporate form to harm a creditor or evade regulation."); *Schlecht v. Equitable Builders*, 272 Or. 92, 97 (1975) ("[T]he corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device." (quoting *Abbot v. Bob's U-Drive*, 222 Or. 147, 161-62 (1960))). In the context of individual shareholders, such conduct includes: (1) grossly undercapitalizing the entity to avoid paying creditors; (2) "milking" the corporate entity, such as by paying excessive dividends, selling products to shareholders at reduced prices, or exacting unreasonable management charges; and (3) misrepresentations by the shareholder to the debtor even if they do not amount to fraud. *Amfac*, 294 Or. at 109-10. Key to analyzing

whether the corporate veil may be pierced is "the relationship between the improper conduct and the creditor's claim." *Amfac*, 294 Or. at 108.

"Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Multi-Flex Cirs. Pty Ltd. v. Emerson*, 2025 WL 1993513, at *5 (N.D. Cal. July 16, 2025) (applying similar California law) (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)).

### 2. James Wolff and his Trust

Formtec alleges that Wolff was the sole managing member and employee of Spherical IP, the "sole person performing any function on behalf of Spherical IP," and the "only person out of all of the Defendants who has the technical capability to work" for Spherical IP. Am. Compl. ¶¶ 34, 77. Formtec also alleges that Wolff made unilateral decisions for Spherical IP without checking with its other two members. *See, e.g.*, Am. Compl. ¶¶ 18, 45. Thus, Formtec alleges that Wolff had sole actual control of Spherical IP.

To sufficiently allege a claim for piercing the corporate veil, however, Formtec also must allege improper conduct. In *Amfac*, the Oregon Supreme Court established that the improper conduct for piercing the corporate veil could either cause "the plaintiff to enter the transaction" or the company to "default on the transaction or a resulting obligation." *Amfac*, 294 Or. at 108-09. Within the specific causes of action, Formtec alleges its harm as arising from Spherical IP's failure to observe corporate formalities and commingling assets. This is an attempt to allege the second type of harm—improper conduct causing the inability to pay Spherical IP's obligation.

Failure to observe corporate formalities, however, is specifically described in the Oregon statute on limited liability companies as *not* forming a basis to pierce the corporate veil. Or. Rev.

Stat. § 63.165(2). Regarding commingling of assets, Formtec alleges on "information and belief" that Spherical IP has transferred its assets to other Defendants, used its assets to pay expenses of Wolff, and commingled its assets with those of other Defendants. Formtec also alleges that Wolff has used Spherical IP's assets as his own and undercapitalized Spherical IP. Such vague and conclusory allegations, however, particularly when based only on information and belief, are insufficient to support a claim for piercing the corporate veil. Courts routinely reject similar generic allegations.[9] *See Giannetta v. Marmel*, 2021 WL 2954076, at *3 (C.D. Cal. May 25, 2021) (considering allegations similar to Formtec's and determining that the "allegations are unsupported by any facts and are conclusory"); *Tan v. Quick Box, LLC*, 2020 WL 7226440, at *13 (S.D. Cal. Dec. 8, 2020) ("Plaintiff alleges in the complaint that 'on information and belief,' Defendant Martorano Holdings LLC does not follow corporate formalities along with the other entities, commingles its assets with the other entities, and assists with the scheme by transferring and holding assets gained from the alleged unlawful activities. These conclusory allegations are insufficient for a prima facie showing . . . ." (citation omitted)); *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 3284177, at *7 (N.D. Cal. Aug. 2, 2017) ("Roberta Trading alleges that 'Mr. Fairbanks treated the company's assets as his own personal funds, diverting funds and assets from the company to himself for personal, non-corporate uses, such as living expenses and entertainment-related purchases.' Such, however, is simply a more expansive way of describing the first factor, without providing actual factual allegations demonstrating at least the plausibility that Mr. Fairbanks did, in fact, commingle funds." (citation omitted)). Formtec, like the plaintiffs in these cited cases, essentially "copied

---

[9] Formtec alleges a specific example of Spherical Innovations purportedly paying alleged personal legal expenses of Wolff. That, however, is not *Spherical IP* paying personal legal expenses of Wolff. Formtec is trying to pierce the corporate veil of Spherical IP.

and pasted the alter ego factors into its amended pleading, hoping that would be enough." *Giannetta*, 2021 WL 2954076, at *3. It is not.

Formtec also generally alleges that Wolff misappropriated Formtec's trade secrets in 2021, causing Formtec to file the arbitration, which resulted in the attorney's fee award that Spherical IP is unable to pay. Formtec, however, does not allege how that conduct resulted in Spherical IP's *inability* to pay the judgment.

The Court also considers whether Formtec sufficiently states a claim under the first category of harm from *Amfac*, harm that caused Formtec to enter into the transaction. The transaction at issue is Formtec entering into the FOT Agreement, the contract that the arbitrators found Spherical IP to have breached. Formtec's general allegations of misconduct regarding trade secret misappropriation in 2021 do not relate to Formtec's entering into the FOT Agreement in 2012. Formtec makes no allegation that Wolff engaged in improper conduct that resulted in Formtec signing the FOT Agreement.

As against Wolff's trust, the only allegation by Formtec is that, again only on information and belief, Wolff "may have moved some or all of his assets" to his trust to avoid collection by Formtec. The basis of Formtec's claim against trustees Wolff and Kristine Wolff appears to be that Wolff wrongly transferred Spherical IP's assets to himself, and then wrongly transferred his own assets to his trust. The Court already has found that the allegations that Wolff wrongly transferred the assets of Spherical IP to himself fail to state a claim. For the same reasons, Formtec's allegation that Wolff *may* have wrongly transferred his own assets to his trust, whether assets from Spherical IP or otherwise, also is too vague and conclusory to state a claim. Nor has Formtec alleged that Spherical IP and the trust were jointly managed in a manner giving rise to joint liability. *See Neidig*, 343 Or. at 456-57 (describing the circumstances in which two

PAGE 15 – OPINION AND ORDER

entities under common control can support piercing the corporate veil). Formtec thus fails to state a claim for piercing the corporate veil against both Wolff and his trust.

### 3. Elisabeth Wolff and her Trust

Formtec alleges that Ms. Wolff owned 40 percent of Spherical IP and that she engaged in improper conduct with respect to Spherical IP. Although some of the allegations of wrongdoing have problems on their merits, the Court need not address them because allegations of improper conduct alone cannot support piercing the corporate veil. Formtec does not allege facts showing that Ms. Wolff had actual control of Spherical IP.

As explained by the Oregon Court of Appeals in rejecting a similar argument relying only on alleged improper conduct,

> Plaintiff's proposed approach misconstrues *Amfac*'s "actual control" requirement and impermissibly conflates the "improper conduct" and "actual control" elements. Under *Amfac*, shareholder liability can be imposed only in circumstances where "the debtor corporation was under the *actual control* of the shareholder." 294 Or. at 108 (emphasis added). Here, Simon was both an active participant in the affairs of Pamcorp and an active participant in much of the conduct at the core of this case. However, he never held a significant interest in either Pamcorp or Pamcorp Holdings, and was not ultimately responsible for the financial decisionmaking of either corporation. In sum, Simon did not possess, or exercise, "actual control."

*Simat, Helliesen & Eichner*, 191 Or. App. at 430-31.

Formtec asserts no allegation supporting that Ms. Wolff was involved with Spherical IP's daily operations or decisionmaking, let alone facts showing that she possessed or exercised "actual control" over Spherical IP. To the contrary, as discussed above, Formtec alleges that Wolff had the sole actual control over Spherical IP. Formtec specifically alleges that Ms. Wolff had no management role with Spherical IP and that her and her brother's ownership interests did not matter in terms of controlling Spherical IP. Formtec thus fails sufficiently to allege that

Ms. Wolff can be held responsible for Spherical IP's debts, failing at the first prong of the *Amfac* test.

As with Wolff's trust, the only allegation Formtec makes against Ms. Wolff's trust is that, on information and belief, Ms. Wolff may have moved some or all of her assets to her trust to make those assets unavailable as a resource to pay Formtec. Formtec fails to state claim that Ms. Wolff wrongfully transferred assets to herself and then to her trust, or that Formtec may pierce the corporate veil of Spherical IP because of its corporate relationship with Ms. Wolff's trust or because of any common ownership between Spherical IP and Ms. Wolff's trust.

### 4. Spherical Innovations

Formtec alleges that Spherical Innovations and Spherical IP were under the common control of Wolff, and thus Formtec can recover from Spherical Innovations the amount owed by Spherical IP. The first *Amfac* factor can be met under this theory when "two corporations were under actual common control and were operated so that the improper use of corporate structures caused harm" to the plaintiff. *Neidig*, 343 Or. at 456. Additionally, the control must be "actual control over the specific conduct that led to the plaintiff's harm." *Id.* at 457.

As discussed above, however, Formtec fails to allege improper conduct that is actionable under the *Amfac* test for piercing the corporate veil. Its allegations regarding commingling of assets, which encompass all Defendants, are too vague and conclusory. Its allegations directed to Spherical Innovations do not add anything on which to base a claim to pierce the corporate veil. These include that Wolff formed Spherical Innovations in 2011 at the same time as Spherical IP. At that time, Spherical IP sold intellectual property to Formtec through the FOT Agreement, and Spherical Innovations entered into a Consulting Agreement with Tomahawk through which Wolff performed services for Tomahawk. Later, Wolff became an employee of Tomahawk. In 2011, Formtec, Tomahawk, Wolff, Spherical IP, and Spherical Innovations entered into

various confidentiality agreements between different subsets of the parties. Formtec alleges that nearly 10 years later, in March 2021, Wolff, while working as an employee of Tomahawk, entered into a confidentiality agreement with Spherical Industries, yet another company, and disclosed Formtec's confidential information to Spherical Industries. Formtec also alleges that Spherical Industries misappropriated Formtec's confidential information.

Formtec further alleges "on information and belief" that Spherical Innovations was formed in 2011 so that Wolff and Spherical IP could transfer Formtec's confidential information to a third party. This allegation is not plausible based on the facts alleged by Formtec. Formtec contends that Wolff used Spherical Innovations for a time to perform consulting services with Tomahawk. Formtec states that 11 years later, when Wolff was an employee of Tomahawk (and not as a consultant through Spherical Innovations), Wolff disclosed Formtec's confidential information to Spherical Industries. Formtec does not allege facts showing that Spherical Innovations was involved in this alleged transfer of confidential information. Formtec asserts that Wolff transferred confidential information between Spherical IP and Spherical Innovations because he considered himself and those two entities to be interchangeable, but Formtec does not allege that Spherical Innovations then transferred any information to a third party.

Additionally, even if Spherical Innovations was somehow involved in the alleged disclosure of confidential information to Spherical Industries, Formtec does not allege how any purported disclosure of confidential information resulted in Formtec either signing the FOT Agreement or Spherical IP being unable to pay its obligation to Formtec. And even if Formtec adequately alleged the first prong of the *Amfac* test, as discussed, it fails to allege the second prong, improper conduct.

PAGE 18 – OPINION AND ORDER

### 5. Spherical IP

Formtec names Spherical IP in its Amended Complaint. Formtec, however, already has a judgment against Spherical IP. It is the entity for which Formtec seeks to have the corporate veil pierced so that Formtec may recover from Spherical IP's owners and other entities affiliated with Spherical IP's owners. Because the Court has found that Formtec fails to state a claim against any of Spherical IP's owners or their affiliated entities, Formtec fails to state a claim for piercing Spherical IP's corporate veil.

## D. Motion based on Affirmative Defenses

### 1. Claim Preclusion

In considering the application of claim preclusion, the Ninth Circuit explained that "[o]rdinarily affirmative defenses may not be raised by motion to dismiss." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). The Ninth Circuit then clarified that the bar to considering the affirmative defense on a motion to dismiss does not apply when "the defense raises no disputed issues of fact." *Id.*

Defendants argue that Formtec may not assert its pending claim because four courts have determined that only Formtec and Spherical are bound by the conclusions of the arbitration panel and the arbitration award. Formtec, however, is not seeking to enforce the arbitration award against Defendants as *directly* liable. Formtec is seeking to pierce the corporate veil, and must allege and prove the elements for piercing the corporate veil. That claim has not yet been litigated and there is no judgment on the merits to apply for preclusion purposes. To the extent Formtec is able sufficiently to state a claim, it will be litigated between Formtec and Defendants before this Court. The Court denies Defendants' motion based on claim preclusion.

### 2. Collateral Attack

Defendants also collaterally attack the underlying arbitration award, arguing that it was obtained through "extrinsic fraud" and thus Defendants should not be held financially responsible for the arbitration award. Whether the arbitration award was obtained through fraud, and whether that fraud was extrinsic or intrinsic, all involve disputes of fact. Thus, this is an affirmative defense that is inappropriate to consider in a motion under Rule 12(b)(6). *See Scott*, 746 F.2d at 1378. The Court denies Defendants' motion collaterally attacking the First Amended Complaint.

## CONCLUSION

The Court GRANTS Defendants' Motion to Dismiss, ECF 12, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court DENIES the motion on all other grounds. Formtec may file a second amended complaint within 14 days of this Opinion and Order. The Court DENIES AS MOOT Defendants' Motion to Stay Discovery Obligations Pending Decision on Defendants' Motion to Dismiss, ECF 21.

**IT IS SO ORDERED.**

DATED this 8th day of September, 2025.

*/s/ Michael H. Simon*
Michael H. Simon
United States District Judge