IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **FORMTEC, LLC**,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**JAMES B. WOLFF**; **SPHERICAL IP, LLC**; **JAMES B. WOLFF and KRISTINE B. WOLFF,** AS TRUSTEES OF THE JAMES B. WOLFF and KRISTINE B. WOLFF REVOCABLE LIVING TRUST; **KRISTINE WOLFF,** AS TRUSTEE OF THE ELISABETH WOLFF IRREVOCABLE TRUST; and **KRISTINE WOLFF,** AS TRUSTEE OF THE ANDREW WOLFF IRREVOCABLE TRUST,<br><br>　　　　Defendants. | Case No. 3:25-cv-704-SI<br><br>**OPINION AND ORDER** |

William G. Fig, SUSSMAN SHANK, LLP, 1000 SW Broadway, Suite 1400, Portland, OR 97205; and Trevor M. Gomberg, LEVITT LLP, 129 Front Street, Mineola, NY. Of Attorneys for Plaintiff Formtec, LLC.

Stephen Healy and Sean D. Healy, LAW OFFICES OF STEPHEN HEALY, 1390 N. McDowell Blvd., Suite G, Petaluma, CA 94952. Of Attorneys for Defendants.

**Michael H. Simon, District Judge.**

　　　Plaintiff Formtec, LLC ("Formtec") formed a contract with Defendant Spherical IP, LLC ("Spherical IP"). The business relationship soured, and Formtec brought an arbitration

PAGE 1 – OPINION AND ORDER

proceeding against Spherical IP. Formtec obtained an award from the arbitrators against Spherical IP in the amount of $1,552,443.71 for attorney's fees and costs. A federal court in the Eastern District of Wisconsin confirmed the arbitration award and awarded Formtec a money judgment in that amount.

Formtec filed the Wisconsin judgment in Clackamas County Circuit Court in Oregon. Afterward, Formtec commenced a state court action against James B. Wolff ("Wolff"); Elisabeth Wolff; Spherical IP; Spherical Innovations, LLC, d/b/a/ Wolff Gunsmithing & Machine Repair ("Spherical Innovations"); and the Elisabeth Wolff Irrevocable Trust. Formtec asserted claims of piercing the corporate veil and alter ego liability. Defendants timely removed the case to this Court and moved to dismiss. Formtec responded to the motion to dismiss and filed a First Amended Complaint, adding as defendants James B. Wolff and Kristine B. Wolff, as Trustees of the James B. Wolff and Kristine B. Wolff Revocable Living Trust and Kristine Wolff, as Trustee of the Elisabeth Wolff Irrevocable Trust. Formtec also removed as a defendant the Elisabeth Wolff Irrevocable Trust. The Court granted Defendants' motion to dismiss the First Amended Complaint.

Formtec then filed a Second Amended Complaint ("SAC"), which is the operative pleading in this matter. ECF 32. In its SAC, Formtec deleted its claims against Elisabeth Wolff and Spherical Innovations and added claims against Kristine Wolff as Trustee of the Andrew Wolff Irrevocable Trust. Formtec also added a claim under Oregon's Uniform Voidable Transactions Act ("UVTA").[1]

---

[1] In 2023, the Oregon Legislature substantively amended Oregon's Uniform Fraudulent Transfer Act and redesignated that law as the "Uniform Voidable Transactions Act." Or. Laws 2023, ch. 83, § 13. Accordingly, earlier case law references to the "Uniform Fraudulent Transfer Act" (or "UFTA") now apply to the Uniform Voidable Transactions Act.

Now before the Court is a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by Defendants James B. Wolff, Spherical IP, and James B. Wolff as Trustee of the James B. Wolff and Kristine Wolff Revocable Living Trust ("Moving Defendants").[2] For the reasons discussed below, the Court grants the motion.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

---

[2] Kristine Wolff, in her role as Trustee of the three trust defendants, has not yet been served. Formtec moved for alternative service, which the Court delayed considering in light of this pending motion to dismiss. Because the Court grants the motion to dismiss as against Kristine Wolff, the Court denies without prejudice Formtec's motion for alternative service.

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[3]

Formtec and Spherical IP entered into an agreement titled the "FOT Agreement," signed September 2012 but effective as of January 1, 2012.[4] The FOT Agreement concerns ownership of "fiber-orientation" and Venturi technology and associated intellectual property rights. SAC ¶ 9. Under the FOT Agreement, Formtec owned 70 percent of the technology and Spherical IP owned 30 percent. *Id.* ¶¶ 9-10.

On May 27, 2021, Formtec commenced an arbitration before the American Arbitration Association ("AAA") against Spherical IP relating to disputes arising out of the FOT Agreement. *Id.* ¶ 11. On November 16, 2022, Formtec obtained the Interim Award of the arbitrators,

---

[3] For purposes of this motion only, Wolff concedes control over Spherical IP. Thus, the Court summarizes the facts alleged relating only to improper conduct, causation, and fraudulent transfer.

[4] The Court incorporates by reference the FOT Agreement and the arbitration award because they are repeatedly cited and relied upon in the SAC. The Court thus takes some factual detail from those documents, which are in the Court record in *Wolff v. Tomahawk*, Case No. 3:21-cv-880-SI.

prevailing on the merits for breach of the FOT Agreement. The arbitrators found that Wolff, as principal of Spherical IP, had disclosed to a third party Formtec's confidential information about water nozzles, thereby violating the FOT Agreement. That third party was Spherical Industries, LLC ("Spherical Industries). The arbitrators also concluded that Formtec was entitled to recover its attorney's fees and costs. On April 7, 2023, Formtec received the final award of the arbitrators, awarding $1,552,443.71. *Id.* ¶ 12. On September 27, 2023, Formtec obtained a money judgment in the Eastern District of Wisconsin based on the arbitrators' award, and on November 24, 2023, Formtec domesticated that money judgment in Clackamas County Circuit Court. *Id.* ¶¶ 13, 15. Spherical IP has not satisfied any portion of the judgment and allegedly has no assets or income. *Id.* ¶¶ 16, 17.

In the pending lawsuit, Formtec alleges that in early 2014 Wolff and Spherical IP misappropriated Formtec's trade secrets by disclosing them to a third party. *Id.* ¶ 22. In March 2021, Wolff entered into confidentiality agreements with Spherical Industries, LLC, which later became known as Spherical Industries, Inc. ("Spherical Industries"), a company created to exploit the technology owned by Formtec. *Id.* ¶ 24. Wolff allegedly held himself out as the owner of the technology and disclosed that technology to Spherical Industries. *Id.* ¶¶ 25, 26. Wolff continues in court filings to hold himself out as the owner of 30 percent of the technology, instead of Spherical IP, failing to acknowledge corporate formalities. *Id.* ¶¶ 20(g), 34. In other court filings Wolff has claimed the patents are his technology and has purported to act unilaterally on behalf of all his companies. *Id.* ¶¶ 20(c), (i), 35-36.

In a recent court case in Nevada, Wolff allegedly "denuded" the value of Formtec's patents by "averring" that the technology was invented by Christopher Duggan. *Id.* ¶ 27. Wolff also has purportedly "denuded" the value of Formtec's intellectual property by transferring trade

secret information to third parties and withholding consent for Formtec to license the technology after the Arbitration Award. *Id.* ¶¶ 28-30.[5] Wolff further allegedly attempted to "denude" the value of Formtec's intellectual property and ignored corporate formalities by filing a personal declaration in the Nevada court case claiming to revoke Formtec's rights to the Technology. *Id.* ¶ 37. Formtec alleges that these actions have devalued the technology such that Spherical IP's 30 percent is worthless and thus makes Spherical IP judgment proof.

In November 2021, after the arbitration was filed, Spherical IP allegedly closed its bank accounts. Formtec also generally alleges that Wolff used his control over Spherical IP to transfer its assets to himself or to his and his family members' trusts and otherwise defrauded the creditors of Spherical IP. *Id.* ¶ 38. Formtec further alleges that Spherical IP is not an operating company. *Id.* ¶ 41(a). Formtec contends that Spherical IP has failed to follow corporate formalities[6] by having no bank account, no offices, no employees other than Wolff, no email

---

[5] The Court does not accept as true the allegations in paragraphs 31 and 32, because they appear to be mischaracterizations of the facts from Case No. 3:21-cv-880-SI, *Wolff v. Tomahawk*, which with this Court is quite familiar. Regarding paragraph 31, Wolff did not contend in that case that Formtec had "no interest in the Technology." Wolf alleged that nine specific aspects of the technology fell outside the FOT Agreement. At summary judgment, the Court concluded that Wolff did not provide sufficient notice under the confidentiality agreement or otherwise did not demonstrate confidential information for all but two of those nine aspects. At trial, the Court granted Formtec's motion for judgment as a matter of law under Rule 50(a), concluding that those two claimed technologies fell within the FOT Agreement.

Regarding paragraph 32, Wolff testified that he would not personally get monies paid to Spherical IP because it was "chartered" in his LLC that all money would go to a trust for his children. *See* Case No. 3:21-cv-880-SI, ECF 587 at 323:13-324:12. Even if the Court accepted the pleaded allegations as true, however, for the same reasons that Formtec's other allegations are insufficient to support piercing the corporate veil, Formtec's allegations do not show improper conduct causing Formtec's inability to collect its judgment.

[6] Formtec's allegations are unclear with respect to timing—whether Spherical IP failed to follow corporate formalities only after it ceased operating (which would not appear to be suspicious), or whether it always failed to follow corporate formalities.

accounts, and not having its members make capital contributions. *Id.* ¶ 41. Formtec, however, also alleges that Spherical *uses* (in the present tense) its assets to pay the expenses of Wolff and his family members.[7] Formtec further alleges that Wolff "devalued" Spherical IP's interest in the technology by "funneling" $150,000 of Spherical IP's legal expenses to another entity, Spherical Innovations, "which had no reason to incur any legal expenses." *Id.* ¶ 44(a).

Regarding fraudulent transfer, Formtec alleges that it first discovered Wolff's transfer of assets from Spherical IP to his and his family members' trusts in mid-2025. *Id.* ¶ 57. Formtec contends that these transfers were done with the express intent to hinder, delay, and defraud the creditors of Spherical IP. *Id.* Formtec contends that these transfers were made to "insiders," as that term is defined in Oregon law, and that they purportedly rendered Spherical IP undercapitalized; Formtec also alleges that Spherical IP did not receive reasonably equivalent value in exchange for the transfers. *Id.* ¶¶ 58, 59, 61.

## DISCUSSION

### A. Timeliness of the Motion to Dismiss

The Moving Defendants did not file their Motion to Dismiss within the time established by the Federal Rules of Civil Procedure and did not request an extension of time from the Court. Defendants, however, request that the Court exercise its discretion and accept the untimely motion to avoid unnecessary duplicative filing of a motion for judgment on the pleadings. The Court accepts the motion and grants an extension of time nunc pro tunc.

---

[7] It is unclear how Spherical IP can use its assets to pay such expenses when Formtec also alleges that Spherical IP has no assets or bank account. Because Formtec's allegations are phrased in the present tense, they appear to be internally inconsistent.

### B. Claim for Piercing the Corporate Veil

#### 1. Legal Standards

Under Oregon law, "debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the limited liability company. A member or manager is not personally liable for a debt, obligation or liability of the limited liability company solely by reason of being or acting as a member or manager." Or. Rev. Stat. ("ORS") § 63.165(1). A company's failure to observe "limited liability company formalities or requirements relating to the exercise of its limited liability company powers or management of its business is not a ground for imposing personal liability on the members or managers." *Id.* § 63.165(2). "In Oregon, the doctrine of corporate veil piercing applies to LLCs [limited liability companies] in the same way that it does to corporations." *Sterling Sav. Bank*, 266 Or. App. at 341.

"The disregard of a legally established corporate entity is an extraordinary remedy which exists as a last resort, where there is no other adequate and available remedy to repair the plaintiff's injury." *Amfac*, 294 Or. at 103. "Oregon courts have been 'extremely reluctant to disregard the corporate form unless exceptional circumstances exist.'" *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1228 (9th Cir. 2005) (quoting *City of Salem v. H.S.B.*, 302 Or. 648, 655 (1987)).

The Oregon Supreme Court has created a three-part test in evaluating such claims:

> When a plaintiff seeks to collect a corporate debt from a shareholder by virtue of the shareholder's control over the debtor corporation rather than on some other theory, the plaintiff must allege and prove not only that the debtor corporation was under the actual control of the shareholder but also that the plaintiff's inability to collect from the corporation resulted from some form of improper conduct on the part of the shareholder. This causation requirement has two implications. The shareholder's alleged control over the corporation must not be only potential but must

> actually have been exercised in a manner either causing the plaintiff to enter the transaction with the corporation or causing the corporation's default on the transaction or a resulting obligation. Likewise, the shareholder's conduct must have been improper either in relation to the plaintiff's entering the transaction or in preventing or interfering with the corporation's performance or ability to perform its obligations toward the plaintiff.

*Id.* at 108-09. Accordingly, a plaintiff in Oregon can pierce the corporate veil when: (1) a defendant shareholder has actual control of a corporation; (2) exercises that control in an "improper" manner; and (3) that misconduct results in the plaintiff entering into the subject transaction, the corporation defaulting in its performance, or the corporation's inability to pay the plaintiff. *Id.*; *see also Oregon Pub. Employees' Ret. Bd. ex rel. Oregon Pub. Employees' Ret. Fund v. Simat, Helliesen & Eichner*, 191 Or. App. 408, 429 (2004) ("Thus, to pierce, the plaintiff must prove that (1) the defendant controlled the debtor corporation; (2) the defendant engaged in 'improper conduct'; and (3) as a result of that 'improper conduct,' plaintiff either entered into a transaction that it otherwise would not have entered into or plaintiff was unable to collect on a debt against the insolvent corporation."); *Hambleton Bros*, 397 F.3d at 1228 ("Oregon courts require three elements to pierce the limited liability veil and impose corporate liability on a shareholder: '(1) The shareholder must have controlled the corporation; (2) the shareholder must have engaged in improper conduct in his exercise of control over the corporation; and (3) the shareholder's improper conduct must have caused plaintiff's inability to obtain an adequate remedy from the corporation.'" (quoting *Rice v. Oriental Fireworks Co.*, 75 Or. App. 627 (1985))).

The Oregon Supreme Court has explained that ownership, even sole ownership, and control of a company and its operations, including "domination," is insufficient by itself to support piercing the corporate veil. *Amfac*, 294 Or. at 106-07. To pierce a corporate veil requires improper conduct. *Id.* at 107 ("Where actual exercise of control is shown to exist, improper

PAGE 9 – OPINION AND ORDER

conduct must also be demonstrated."). Improper conduct requires some amount of "moral culpability," which "narrows the range of illegal or tortious conduct that can be considered . . . for purposes of piercing the veil." *State ex rel. Neidig v. Superior Nat. Ins. Co.*, 343 Or. 434, 460 (2007). In this context, improper conduct needed to pierce a corporate veil must in some way seek to manipulate the corporate form to the detriment of the corporation's creditors. *See id.* ("[C]onduct that can be considered 'improper'" includes "oppressive or manipulative conduct that uses a corporate form to harm a creditor or evade regulation."); *Schlecht v. Equitable Builders*, 272 Or. 92, 97 (1975) ("[T]he corporate veil may be lifted to protect persons whose rights have been jeopardized by the corporate device." (quoting *Abbot v. Bob's U-Drive*, 222 Or. 147, 161-62 (1960))). In the context of individual shareholders, such conduct includes: (1) grossly undercapitalizing the entity to avoid paying creditors; (2) "milking" the corporate entity, such as by paying excessive dividends, selling products to shareholders at reduced prices, or exacting unreasonable management charges; and (3) misrepresentations by the shareholder to the debtor even if they do not amount to fraud. *Amfac*, 294 Or. at 109-10. Key to analyzing whether the corporate veil may be pierced is "the relationship between the improper conduct and the creditor's claim." *Amfac*, 294 Or. at 108.

"Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." *Multi-Flex Cirs. Pty Ltd. v. Emerson*, 2025 WL 1993513, at *5 (N.D. Cal. July 16, 2025) (applying similar California law) (quoting *Sandoval v. Ali*, 34 F. Supp. 3d 1031 (N.D. Cal. 2014)).

### 2. Discussion

The Moving Defendants argue that Formtec fails to add sufficient new facts to cure the deficiencies previously identified by the Court. Formtec primarily has alleged facts relating to

Wolff's allegedly improper conduct that resulted in the underlying arbitration decision—providing trade secret information to third parties—and post-judgment conduct of personally claiming ownership of the technology, unilaterally acting for his companies (including Spherical IP), and making statements under oath in courts that Formtec contends are false. Formtec cites *Solterra Strata LLC v. Seabold Construction Co.*, 2024 WL 4475019 (D. Or. Oct. 11, 2024), as a case with "similar allegations" as instructive.

    *Solterra Strata*, however, is distinguishable from this case. The plaintiffs in *Solterra Strata* relied on the theory for piercing the corporate veil of misrepresentations *to creditors*. 2024 WL 4475019, at *3 ("Shareholders engage in improper conduct when they make a misrepresentation to a creditor."). None of Formtec's alleged misrepresentations by Wolff are to a creditor. Further, the misrepresentations at issue in *Solterra Strata* involved whether the underlying debts were paid. *Id.* at *3-4. The misrepresentations alleged by Formtec have nothing to do with the arbitration award for attorney's fees. *Solterra Strata*, therefore, is inapposite and provides no support for Formtec's claim of piercing the corporate veil.

    Formtec must allege improper conduct that has a causal connection to Formtec's specific harm of not being able to collect on its judgment. *See Amfac*, 294 Or. at 108-09; *Hambleton Bros*, 397 F.3d at 1228. Formtec's allegations about Wolff's myriad statements in various courts, that before the judgment Wolff misappropriated Formtec's trade secrets, and that Wolff has behaved as if the technology was owned by him do not plausibly relate to Formtec's inability to collect on its judgment.

    Formtec's allegation that Spherical Innovations paid $150,000 of Spherical IP's legal expenses also does not plausibly relate to Formtec's inability to collect on its judgment. To the contrary, using a separate entity to pay $150,000 of Spherical IP's legal expenses would seem to

PAGE 11 – OPINION AND ORDER

do the opposite—benefit Spherical IP and its creditors by paying Spherical IP's legal bill. Indeed, it is difficult to surmise how Spherical IP, which was an entity created solely to capitalize on the technology with Formtec and was paid only a total of $150,000 for that technology, could fully fund its own legal expenses or have any assets remaining after paying legal expenses for an arbitration that cost its opposing party more than $1.5 million in attorney's fees.

Formtec also alleges that Wolff's actions have reduced the value of the technology owned by Formtec and Spherical IP, thereby hindering Formtec's ability to collect from Spherical IP. It is not plausible, however, that the alleged statements made by Wolff in court cases has reduced the value of Formtec's intellectual property. Nor has Formtec plausibly alleged that Spherical IP's 30 percent ownership and 15 percent of equipment sales and leasing has any value. Formtec alleges that Spherical has no assets and no income. If Formtec and Spherical IP's intellectual property has had any value over the past years (before Wolff made his statements in court), then Formtec presumably would have paid itself the payments it owed Spherical IP. But Formtec alleges that no payments have been made toward Spherical IP's debt. A reasonable inference is that since the judgment of April 27, 2023, Formtec has owed no payments to Spherical IP.[8]

Formtec also relies on the lack of corporate formalities followed by Spherical IP. In addition to the unclear nature of Formtec's allegations highlighted above, failure to observe corporate formalities is specifically described in the Oregon statute on limited liability companies as *not* forming a basis to pierce the corporate veil. ORS § 63.165(2).

---

[8] This comports with the trial testimony in the related case of *Wolff v. Tomahawk*, Case No. 3:21-cv-880-SI, in which Wolff testified that Spherical IP has *never* received any payments from Formtec after the original $150,000 due from the signing of the FOT Agreement.

This leaves Formtec's general allegations that Wolff has transferred assets to himself and his family and that Spherical IP closed its bank account. Regarding the former, Formtec's allegation is too vague and general to support piercing the corporate veil. Formtec simply dropped the "information and belief" from its previous allegation, but did not add any *facts* regarding the alleged transfers or commingling of assets. Courts reject such vague allegations, even when not on information and belief. *See, e.g.*, *Prods. & Ventures Int'l v. Axus Stationary (Shanghai) Ltd.*, 2017 WL 3284177, at *7 (N.D. Cal. Aug. 2, 2017) ("Roberta Trading alleges that 'Mr. Fairbanks treated the company's assets as his own personal funds, diverting funds and assets from the company to himself for personal, non-corporate uses, such as living expenses and entertainment-related purchases.' Such, however, is simply a more expansive way of describing the first factor, without providing actual factual allegations demonstrating at least the plausibility that Mr. Fairbanks did, in fact, commingle funds." (citation omitted)).

Regarding the allegation that Spherical IP closed its bank account, Formtec merely alleges that the account closed, which "dissipated" Spherical IP's assets. Formtec does not allege that the bank account had any funds when it closed or that its funds were transferred to Wolff or his family after closing. Formtec also alleges that Spherical IP is no longer an operating company. There is no reason for a nonoperating company to have a bank account. Further, the mere fact that Wolff closed Spherical IP's bank account, even if suspect, is insufficient to show the exceptional circumstances for piercing the corporate veil.

Formtec fails to state a claim for piercing the corporate veil against the Moving Defendants. Formtec amended its complaint after it responded to the first motion to dismiss and then the Court described the deficiencies in the amended complaint and allowed a second amended complaint. The Court thus dismisses this claim with prejudice.

## C. Claim for Fraudulent Transfer

### 1. Legal Standard for Fraudulent Transfer

Formtec alleges intentional fraudulent transfer under ORS § 95.230(1)(a) and constructive fraudulent transfer under ORS §§ 95.230(1)(b)(B). *See also Doughty v. Birkholtz*, 156 Or. App. 89, 96 (1998) (explaining the two types of fraudulent transfers under Oregon's uniform statute). Because Oregon's UVTA is based on the uniform statute, Oregon law instructs that it is to be "applied and construed to effectuate its general purpose to make uniform the law" with other states that have adopted the uniform act. ORS § 95.300; *see also Twigg v. Opsahl*, 316 Or. App. 775, 783 (2022) ("Case law from other UFTA jurisdictions is instructive." (citing ORS § 95.300)), *opinion modified in part on reconsideration on other grounds*, 317 Or. App. 815 (2022); *Rowden v. Hogan Woods, LLC*, 306 Or. App. 658, 683-84 (2020) (quoting ORS § 95.300 and extensively reviewing case law in other jurisdictions).

Oregon's UVTA provides:

> A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
> >
> > (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> >
> > > . . . .
> > >
> > > (B) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

ORS § 95.230(1). The statute further provides, as relevant to Formtec's argument:

> In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:
>
> > (a) The transfer or obligation was to an insider;
> >
> > . . . .
> >
> > (c) The transfer or obligation was disclosed or concealed;
> >
> > (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
> >
> > (e) The transfer was of substantially all the debtor's assets; [and]
> >
> > . . . .
> >
> > (j) The transfer had occurred shortly before or shortly after a substantial debt was incurred[.]

ORS § 95.230(2).

### 1. Pleading Standard

When a complaint includes allegations of fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the allegations be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charges so that they can defend against the charge and not just deny that they have not done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). "Rule 9(b) requires that parties state with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged." *Bodenburg v. Apple Inc.*, 146 F.4th 761, 771 (9th Cir. 2025) (cleaned up)). Moreover, although Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b), in alleging fraudulent transfer on the belief of a defendant's improper intent, the plaintiff must "alleg[e] facts upon which the belief is grounded." *Villanueva v. Liberty Acquisitions Servicing, LLC*, 215 F. Supp. 3d 1045, 1056 (D. Or. 2016).

PAGE 15 – OPINION AND ORDER

Courts in this circuit acknowledge that Rule 9(b) applies to fraudulent transfer claims asserting actual fraudulent transfer. *See Adelaja v. Guillen*, 2025 WL 3079049, at *6 (N.D. Cal. Nov. 4, 2025) (considering claims under the California Uniform Voidable Transactions Act); *Trina Solar US, Inc. v. Carson-Selman*, 2020 WL 7338552, at *4 (D. Nev. Dec. 14, 2020) (considering claims under Nevada's fraudulent transfer law); *Villaneuva*, 215 F. Supp. 3d at 1054 (applying Delaware law); *In re Berjac of Oregon*, 538 B.R. 67, 79 (D. Or. 2015) (applying Rule 9(b) to fraudulent transfer claims under Oregon law).

Courts, however, generally consider constructive fraud claims to be "not based on fraudulent intent but on the debtor's financial condition and the sufficiency of the consideration provided by the transferee" and thus not subject to Rule 9(b). *Trina Solar*, 2020 WL 7338552, at *4 (quotation marks omitted); *see Villaneuva*, 215 F. Supp. 3d at 1054. But when the plaintiff's claims are grounded in fraud, the entire complaint must be pleaded with particularity. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (explaining that when a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of" a claim not otherwise subject to Rule 9(b), that claim must be plead with particularity).

### 2. Claim for Intentional Fraudulent Transfer

Formtec fails to allege this claim with the required particularity. Formtec generally alleges that Wolff caused Spherical IP to transfer funds to Wolff's family, who Formtec contends are insiders. Formtec offers no facts supporting this allegation but simply alleges that transfers occurred without reasonably equivalent value. This is no more than alleging the elements and fails to support Formtec's claim. *See Adelaja*, 2025 WL 3079049, at *6 (rejecting a fraudulent transfer claim that failed to "allege any facts about the transfers, such as the nature and amount of the transfers, dates of transfers, how Gallaher made the transfers"); *In re Berjac of*

*Oregon*, 538 B.R. at 79 ("Here, the Amended Complaint lacks vital details relating to the allegedly fraudulent transfers that give rise plaintiff's first claim for relief. Specifically, as stated above, the Amended Complaint fails to make clear when the alleged transfers took place. Thus, it is unclear whether plaintiff's first claim was brought within the time period prescribed by ORS 95.280.").

Formtec also relies on the fact that Spherical IP closed its bank account after it was sued in arbitration. But again, as discussed above, Formtec does not allege any facts about this closure that could plausibly show this constitutes a fraudulent transfer. Formtec also fails to allege this conduct with particularity.

Formtec next argues that because it did not learn about the transfers until mid-2025, the transfers were concealed. This is insufficient to allege concealment. First, as discussed, Formtec insufficiently alleges any fraudulent transfer. Second, Formtec does not allege how it learned about the transfers. Its failure to learn about the transfers may have been through its negligence and not concealment. Third, Formtec alleges no facts plausibly supporting concealment. Active concealment means:

> Any words or acts which create a false impression covering up the truth, or which remove an opportunity that might otherwise have led to the discovery of a material fact as by floating a ship to conceal the defects in her bottom, sending one who is in search of information in a direction where it cannot be obtained, or even a false denial of knowledge by one in possession of the facts are classed as misrepresentations, no less than a verbal assurance that the fact is not true.

*Caldwell v. Pop's Homes, Inc.*, 54 Or. App. 104, 113, 634 P.2d 471 (1981) (quoting William L. Prosser, Law of Torts § 106, at 695 (4th ed. 1971)) (cleaned up); *see also Martell v. Gen. Motors LLC*, 537 F. Supp. 3d 1192, 1197 (D. Or. 2021) ("Because Plaintiff is bringing a fraudulent concealment claim, he must allege facts showing GM's deceptive acts intended to prevent

PAGE 17 – OPINION AND ORDER

discovery of the concealed information."). Thus, Formtect fails sufficiently to allege intentional fraudulent transfer.[9]

### 3. Claim for Constructive Fraudulent Transfer

Formtec relies on the same allegations to support its claim for constructive fraud. Thus, it relies on the same fraudulent course of conduct, and this claim is subject to Rule 9(b) and fails for lack of particularity. Formtec offers only general allegations of transfers that had no reasonably equivalent value, without supporting facts. These insufficient allegations would be fatal even if Rule 9(b) did not apply.

Additionally, there is a temporal requirement to constructive fraud. Formtec does not allege any transfer after it became a creditor, because Spherical IP allegedly had closed its bank account and ceased operating by then. The only allegation near in time to when Spherical IP reasonably should have known about the possibility of its debt to Formtec (the arbitration award), is the alleged closing of Formtec's bank account after the arbitration began. This allegation, however, in insufficient to support a claim, as described above.

Formtec fails to state a claim against the Moving Defendants for fraudulent transfer. Because this is Formtec's first attempt at bringing this claim and the Court's first analysis of this claim and discussion of its deficiencies, the Court will allow Formtec one more opportunity to plead this claim.

---

[9] Formtec made no separate argument for its reliance on subsections (e) and (j) (which Formtec erroneously identified as subsection (f)) of ORS § 95.230. But those sections are duplicative of its arguments that Wolff made improper transfers and closed Spherical's bank account, relating to subsections (a) and (d), and fails for the same reasons.

### D. Nonmoving Defendants

A trial court may *sua sponte* dismiss claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, even shortly before trial. *Omar v. Sea-Land Serv., Inc.*, 813 F.2d 986, 991 (9th Cir. 1987); *see also Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) ("As a legal matter, we have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had appeared."); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related."). Thus, for the same reasons the Court dismisses the claims against the Moving Defendants, the Court dismisses the claims against the nonmoving defendants.

## CONCLUSION

The Court GRANTS the Moving Defendants' Motion to Dismiss, ECF 35, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court dismisses Formtec's claim of piercing the corporate veil with prejudice. The Court dismisses Formtec's claim of fraudulent transfer without prejudice. Formtec may file a Third Amended Complaint within 14 days of this Opinion and Order but may not replead its claim for piercing the corporate veil. The Court DENIES WITHOUT PREJUDICE Formtec's Motion to Allow Service Via Alternative Means. ECF 33.

**IT IS SO ORDERED.**

DATED this 4th day of December, 2025.

                                        */s/ Michael H. Simon*
                                        Michael H. Simon
                                        United States District Judge